## OBTAINING MONEY ON A CHECK THAT HAD BEEN RAISED.

Common Pleas Court of Hamilton County.

STATE OF OHIO v. JOHN C. GRIFFITH.*

Decided, September 29, 1914.

*Criminal Law—Forgery, Uttering Forged Check and Obtaining Money by False Pretenses—Reopening of Case for Hearing of a Witness—Verdict Not Inconsistent—Evidence of Impeaching Witness.*

1. It is not inconsistent for a jury to find a defendant not guilty of forgery or the uttering of a forged check, but guilty of false pretenses in obtaining money upon a check which had been raised.
2. It is within the discretion of the court to reopen a case for the purpose of calling a witness to testify as to a point involved in a special charge which has been asked.
3. A motion lies to strike out the answer of an impeaching witness, whose reply to a question as to whether the reputation of the person named was good or bad, was "Well, with me it has been bad."

*Cogan, Williams & Ragland,* for the motion.
*Walter M. Locke,* Assistant Prosecuting Attorney, contra.

MAY, J.

Opinion overruling motion for a new trial.

The defendant in this case was indicted on three counts.

The first count charged the defendant with forging a check drawn on the Second National Bank, to the order of cash, pay roll, signed by the Westlake Construction Company, *per* George Sexton, General Superintendent. The contention was that the check was originally made out for $1,597.30, and that the defendant altered it so that it read for $3,597.30.

The second count charged the defendant with uttering and publishing as true and genuine the check set out in the first count of the indictment, knowing the same to be false, forged and counterfeited at the time it was uttered.

*Affirmed by the Court of Appeals, *Griffith* v. *State,* 24 C.C.(N.S.),—.

The third count alleged that the Westlake Construction Company was a depositor of the Second National Bank and had on deposit, subject to withdrawal, $3,600, and that the defendant presented the check set out in the first count of the indictment, payable to cash, pay roll, in the sum of $3,597.30, representing it to be a good and valid check of the Westlake Construction Company to the amount of $3,597.30, well knowing in truth and in fact that the check so presented was originally made out in the sum of $1,597.30 and had been altered and changed by him from $1,597.30 to $3,597.30 without the knowledge or consent of the Westlake Construction Company or George Sexton, with the intent to cheat and defraud the Second National Bank out of the same, and that at the time he so falsely pretended as aforesaid he well knew the said pretenses and all of them then and there to be false. In short, the third count was for obtaining money from the Second National Bank by false pretenses.

From the record of the case it appears that at the October term, 1913, the defendant had been indicted for embezzling from the Westlake Construction Company a sum of money amounting to $5,434.06, and at the January term of the court of common pleas he was arraigned on said indictment for embezzlement and pleaded guilty and was given a suspended sentence.

After the indictment in the present case was returned a plea in bar was filed to the third count of the indictment on the ground that the money obtained by false pretenses from the Second National Bank was included within the amount charged as having been embezzled by the defendant. Judge Gorman, then sitting in the criminal room, sustained a demurrer of the state to this plea in bar, and this ruling was followed by the trial judge.

At the trial there was a conflict of evidence as to whether or not the check was altered after it was signed by the superintendent, Sexton. Sexton testified that when he signed the check the amount was $1,597.30. The receiving teller of the Second National Bank, who was acting as paying teller in the absence of the regular paying teller, testified that the check was not altered. The evidence also showed that the defendant, Griffith,

cashed a check, receiving $3,597.30 from the bank, and left his bank book for balance, he having charge of all the banking business of the Westlake Construction Company, and that immediately after receiving canceled check he left the city and that the canceled check was never returned to the company.

The jury returned a verdict of guilty on the third count of the indictment, that is, finding the defendant guilty of obtaining $2,000 from the Second National Bank by false pretenses.

The defendant has filed a voluminous motion for a new trial, setting out twenty grounds. Upon the argument of this motion all·the grounds were not pressed.

There are three grounds which are especially pressed by counsel for the defendant.

The first is that the verdict of the jury is inconsistent in that it found the defendant not guilty on the first and second counts of the indictment, that is, not guilty of forgery and uttering a forged check, but guilty of obtaining money from the bank by false pretenses on a forged check.

From the evidence I can not say that this verdict is inconsistent. The jury were instructed that they could not find the defendant guilty on the third count of the indictment unless they found that the check was forged or altered at the time that it was presented by the defendant to the bank and the defendant knew at the time that he presented the check that it was forged or altered in the amount and that he presented it with the intent to receive the larger amount on the check and that the bank acted upon his representations to its detriment.

The court said in its charge:

"If this check was signed by Sexton and at the time it was signed by Sexton was made out to the amount of $3,597.30, and Sexton made out the check for that amount or signed it with that amount in it at the time that he signed it, the defendant can not be guilty of obtaining money on false pretenses under the third count of the indictment, for the reason that the bank would not have been defrauded of any money. The bank would have honored a check drawn by a depositor under a proper signature and between the bank and the depositor the bank could not be liable and therefore could not have been defrauded of its money.

But if the check was a forged check at the time it was presented for payment at the bank and Griffith in presenting a forged check to the bank knew it was forged and fraudulent and represented to the bank in the presenting of it that it was a good check and had been drawn for the full amount, and the bank had paid the check, then the bank would be liable to the depositor for having paid the check which the depositor did not draw, and Griffith would be liable for obtaining from the bank the difference between the amount of the check as originally drawn and the check as altered by him, and then he would be guilty of obtaining money to the value of this difference under false pretenses if at the time you should find beyond a reasonable doubt that he knew the check was forged or altered at the time he presented it."

That a person may be guilty of obtaining money by false pretenses by means of a forged check is well settled. See *Wharton on Criminal Law,* Eleventh Edition, Section 1427, and cases cited in Note 1. Of these cases, *Reg.* v. *Prince,* L. R., 1 C. C., 150; *Com.* v. *Stone,* 4 Met., 43; *Com.* v. *Nason,* 9 Gray, 125; *Tyler* v. *State,* 2 Humph., 37, bear out the text.

The jury had the right under the evidence and charge of the court to find the defendant guilty as charged on any or all of the counts in the indictment. If the jury saw fit to find the defendant guilty under the third count, which carries with it a much less penalty than that under the other counts, that was its privilege.

Another ground of error which is strongly pressed upon the court is in admitting testimony of the witness Darby in rebuttal, it being claimed by the defendant (1) that there was no evidence to rebut, and (2) that the evidence given was secondary evidence.

When the witness Sexton was on the stand for the state, the court permitted the defense, over the objection of the state, to cross-examine the witness to ascertain whether the amount of the forged check was included within the embezzlement charge. This was done for the purpose of testing the credibility of the witness, who had testified that the check was in the sum of $1,597.30 at the time that he signed it. The defense in its case offered no evidence whatsoever to show that this amount was included within the embezzlement charge.

At the conclusion of all the evidence a special charge was requested by the defense, instructing the jury to return a verdict of not guilty on the third count if the amount was included within the embezzlement charge.  The state then asked permission to call a witness to show that the amount of the check was not included and the witness Darby was permitted to take the stand over the objection of the defense.

The re-opening of the case and permitting the witness to be called was purely within the discretion of the court, and in the court's opinion is not such an abuse of discretion as to justify granting a new trial.

Under the view that the  court took of the third count of the indictment, the testimony of the witness Darby (conceding, for the purpose of argument, that his testimony that the amount of the forged check was not included within the embezzlement charge was secondary) was entirely irrelevent, therefore, if it was error to admit this evidence it was not prejudicial.

As stated above, the court charged the jury on this third count that the defendant could not be convicted unless the check was forged.  The charge was obtaining money by false pretenses on a forged check and was entirely different from the embezzlement charge.

The last ground of error that was argued at length was the claim that the court erred in ruling out the evidence of the witness Sykes, who had been called as an impeaching witness.

Sykes was called by the defendant and after having testified that he knew the witness Sexton for five or six years, that he had known him all over the country and that he had been working with him on the new hospital work in the city and in Texas, was asked the following questions:

"Q.   Do you know what his reputation is for truth and veracity, Mr. Sykes—answer yes or no?   A. Yes, I do.
"Q.   Is it good or bad?   A.  Well, with me it has been bad."

Counsel for the state objected and moved that the preceding answer be stricken out and the court sustained the motion and instructed the jury to disregard it, to all of which counsel for defendant excepted.

It is claimed that this is prejudicial error.

There can be no doubt that if the witness had answered that the reputation was bad, that it would have been error to have granted this motion.  But only one construction can be placed upon the answer of the witness: "Well with me it has been bad," namely, that as far as the witness was personally concerned that his individual opinion was that it was bad.

In *Cowan* v. *Kinney*, 33 Ohio St., 422, the Supreme Court says that—

"When the testimony of a witness, called to discredit another for truth, shows that he is testifying from his personal knowledge and not from the general reputation of the person whose testimony is sought to be discredited, it is not error to exclude it.  It is error, however, to reject the testimony when the answer of the witness manifestly shows he testified from a knowledge of the general reputation of such person for truth and veracity."

The general rule regarding impeaching witnesses is to ask the witness whether he knows the general reputation for truth and veracity, and after he answers that he does to ask him whether it is good or bad, and then if he answers that it is bad the witness is permitted to be asked whether he would believe him under oath.  *Craig* v. *State,* 5 Ohio St., 605; *Hillis* v. *Wylie,* 26 Ohio St., 574.

In this latter case the Supreme Court says:

"Where a witness acquainted with the reputation of another for truth and veracity, testifies that such reputation is bad, he may be allowed to further testify that from such reputation he would not believe the witness sought to be impeached under oath.  The object of such testimony is not to introduce as evidence the opinion of the impeaching witness as to the truthfulness of the witness against whom he testifies, but to enable the jury to ascertain the true character of such reputation as the impeaching witness understands it, and thereby determine the extent to which it ought to discredit the witness."  See also, *Burklin* v. *State,* 20 Ohio, 18.

It will be noticed that the witness Sykes did not testify that the reputation of the witness Sexton was bad, but only that with him it was bad.  This, under the ruling of *Cowan* v. *Kinney, ubi supra,* was incompetent.

The court, as appears from the record, informed counsel that there was a proper way of putting questions to an impeaching witness and gave counsel the opportunity to put the questions in a proper way. Counsel did not see fit to avail themselves of this opportunity, neither did they make any proffer of what they expected to prove by the witness after the sustaining of certain objections.

It is contended in the assignments of error that the court erred in permitting the prosecuting attorney in his argument to comment upon the fact that the defendant had not taken the witness stand, and that the court erred in its charge to the jury in referring to this matter.

Under the amendment to the Constitution, adopted in September, 1912, the prosecuting attorney is permitted to comment upon the failure of the defendant to take the stand, and this ground of error is not well taken.

I do not think that the verdict is manifestly against the weight of the evidence and I am loath to set aside the verdict of the jury for that reason.

Motion for a new trial is therefore overruled.

----

## EXCEPTIONS TO THE REPORT OF A RECEIVER.